**CITY COURT OF THE STATE OF NEW YORK**

**CITY OF UTICA: COUNTY OF ONEIDA**

Lisa M. Beilfuss, | Index No.: CV 00966-26

Plaintiff,

-against-

AMERICAN EXPRESS NATIONAL BANK d/b/a
AMERICAN EXPRESS,

FILED UTICA CITY COURT
JUN 24 '26 PM1:17

Defendant.

---

**VERIFIED COMPLAINT**

Plaintiff Lisa M. Beilfuss, appearing pro se, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Lisa M. Beilfuss is a natural person residing at 200 Stonegate Road, New Hartford, New York 13413.
2. Plaintiff resides in the Town of New Hartford, Oneida County, New York. New Hartford is adjacent and contiguous to the City of Utica.
3. Defendant American Express National Bank d/b/a American Express is a national bank that issues, services, collects, furnishes, and administers American Express accounts, including the account at issue in this action.
4. Defendant's principal office is located at 115 West Towne Ridge Parkway, Sandy, Utah 84070.
5. Defendant is subject to personal jurisdiction in New York because Defendant transacted business in New York, contracted to supply credit-card and account services to Plaintiff in New York, serviced and reported on the account of a New York resident, communicated with Plaintiff in New York concerning the account and its credit reporting, and the claims asserted here arise from that New York-directed account servicing, dispute handling, furnishing, and the resulting credit and mortgage harm.
6. This Court has monetary jurisdiction because Plaintiff seeks money damages not exceeding $15,000, exclusive of interest and costs.
7. This Court is a proper court because Plaintiff resides in a same-county town contiguous to the City of Utica.

**CITY COURT OF THE STATE OF NEW YORK**

**CITY OF UTICA: COUNTY OF ONEIDA**

Lisa M. Beilfuss,

Index No.: CV00966-26

Plaintiff,

-against-

AMERICAN EXPRESS NATIONAL BANK d/b/a AMERICAN EXPRESS,

FILED UTICA CITY COURT JUN 24 '26 PM1:17

Defendant.

---

**VERIFIED COMPLAINT**

Plaintiff Lisa M. Beilfuss, appearing pro se, alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Lisa M. Beilfuss is a natural person residing at 200 Stonegate Road, New Hartford, New York 13413.
2. Plaintiff resides in the Town of New Hartford, Oneida County, New York. New Hartford is adjacent and contiguous to the City of Utica.
3. Defendant American Express National Bank d/b/a American Express is a national bank that issues, services, collects, furnishes, and administers American Express accounts, including the account at issue in this action.
4. Defendant's principal office is located at 115 West Towne Ridge Parkway, Sandy, Utah 84070.
5. Defendant is subject to personal jurisdiction in New York because Defendant transacted business in New York, contracted to supply credit-card and account services to Plaintiff in New York, serviced and reported on the account of a New York resident, communicated with Plaintiff in New York concerning the account and its credit reporting, and the claims asserted here arise from that New York-directed account servicing, dispute handling, furnishing, and the resulting credit and mortgage harm.
6. This Court has monetary jurisdiction because Plaintiff seeks money damages not exceeding $15,000, exclusive of interest and costs.
7. This Court is a proper court because Plaintiff resides in a same-county town contiguous to the City of Utica.

8. Plaintiff seeks money damages only in this action. Plaintiff does not ask this Court to issue injunctive or equitable relief beyond any relief the Court may lawfully grant in connection with a money judgment.

9. Plaintiff brings this action individually. Praxis Financial Publishing LLC is not a plaintiff in this action.

10. Full account numbers and confidential personal information are intentionally omitted or redacted. The account at issue is referred to by its last five digits: 71003.

## FACTUAL ALLEGATIONS

11. This action concerns American Express Account No. ending 71003.

12. In or about 2023, Plaintiff opened Account ending 71003 in connection with Praxis Financial Publishing LLC, a business Plaintiff founded.

13. Account ending 71003 was opened, titled, marketed, and treated by Defendant as a small-business account.

14. Plaintiff used the account for business-related expenses.

15. Plaintiff maintained a separate American Express consumer account, ending 6903, which is not the account at issue in this action.

16. Through 2024, Account ending 71003 was paid in full.

17. In 2025, the account became dominated by disputed fees, interest, returned-payment entries, and reversal entries rather than new merchant purchases.

18. Defendant's own 2025 Year-End Summary reflects approximately $29.24 in 2025 merchant purchase activity, while reflecting approximately $1,233.86 in fees, interest, returned-payment entries, and reversal entries.

19. Defendant's June 1, 2026 response submitted through the Consumer Financial Protection Bureau accounted for only approximately $334.48 in returned-payment fees, late fees, and interest, and did not reconcile that amount with the larger $1,233.86 figure reflected in Defendant's own Year-End Summary.

20. On or about September 24, 2025, Plaintiff caused payment of $209.12 to be made to Defendant through Check No. 986235, care of The Gallatin Group LLC, in settlement of Account ending 71003.

21. The $209.12 settlement payment was made against a previously asserted balance of approximately $1,327.

22. Defendant accepted the $209.12 settlement payment.

23. Defendant, through its Outside Agency division, later issued a May 6, 2026 letter confirming receipt of the settlement payment and confirming that the payment resolved the account for settlement purposes.

24. Defendant's May 6, 2026 letter further represented that no further collection attempts would be made concerning the remaining balance.

25. Despite the settlement, Defendant maintained contradictory internal and customer-facing account records.

26. Defendant's customer portal later displayed a $112.61 balance and a payment-due notice while simultaneously stating that the account was settled and that no further payment was required.

27. That portal display was materially misleading, contradictory, and harmful because it suggested an active payment obligation after Defendant had confirmed settlement.

28. Defendant also maintained adverse consumer-credit treatment concerning Account ending 71003 after Plaintiff disputed the account.

29. Plaintiff disputed the account directly with Defendant.

30. Plaintiff disputed the account through one or more consumer reporting agencies.

31. Upon information and belief, the consumer reporting agencies transmitted Plaintiff's disputes to Defendant for investigation and verification.

32. Defendant nevertheless continued to maintain, verify, or refuse to correct adverse account information concerning Plaintiff.

33. Plaintiff's consumer-credit reports and dispute results reflected adverse American Express information concerning Account ending 71003, including disputed negative status reporting.

34. Plaintiff contends that the reporting was inaccurate, incomplete, inconsistent, duplicative, or unverifiable because Defendant failed to reconcile its own settlement letter, credit-bureau correspondence, customer-portal records, 2025 Year-End Summary, CFPB response, and subsequent Credit Bureau Unit correspondence.

35. Plaintiff further contends that Defendant's account records were internally inconsistent as to account status, balance, settlement date, collection status, credit-reporting status, and whether any remaining amount was owed.

36. Defendant's May 11, 2026 Credit Bureau Unit correspondence maintained an unsatisfactory account status shortly after Defendant's May 6, 2026 settlement/no-further-collection letter.

37. Defendant's June 1, 2026 CFPB response asserted that the reporting was accurate, refused to refund disputed fees or interest, refused to delete or correct the disputed reporting, and asserted that the account may remain on consumer credit reports until approximately October 2031.

38. Defendant's June 1, 2026 CFPB response did not adequately reconcile the May 6, 2026 settlement/no-further-collection letter, the May 11, 2026 credit-bureau correspondence, the $112.61 portal balance display, the $1,233.86 in disputed 2025 entries, the $334.48 partial fee explanation, or the consumer-credit harm.

39. On or about June 10, 2026, Defendant's Credit Bureau Unit sent Plaintiff correspondence acknowledging receipt of a June 4, 2026 inquiry regarding credit-bureau reporting for Account ending 71003.

40. In that June 10, 2026 correspondence, Defendant requested Plaintiff's Social Security number, Plaintiff's year of birth, and a copy of Plaintiff's original correspondence, and stated that the account identifier referenced in the letter must be included in all correspondence regarding credit-bureau reporting because it is used for furnishing information to the credit reporting agencies.

41. The June 10, 2026 correspondence further confirms that Defendant was treating the disputed account as a consumer credit-bureau furnishing matter, had notice of Plaintiff's credit-reporting dispute, and possessed or used account-identifying information tied to consumer-credit furnishing.

42. In March 2026, Plaintiff was actively pursuing residential mortgage financing.

43. Plaintiff applied for residential mortgage financing with one or more residential mortgage lenders.

44. Plaintiff is informed and believes, based on written communications with her mortgage banker, that the American Express tradeline specifically affected her credit score and mortgage rate.

45. Plaintiff is further informed and believes, based on those same written communications, that the American Express tradeline was the only item her mortgage banker could identify as causing the relevant credit-score and mortgage-pricing impact.

46. The estimated mortgage-rate impact is approximately 3/8% to 1/2%, subject to proof through lender records, credit-score disclosures, rate sheets, pricing worksheets, adverse-action notices, and underwriting communications.

47. On June 3, 2026, Plaintiff sent Defendant a written demand letter identifying the disputed reporting, contradictory account records, disputed fee and reversal entries, disputed portal balance, settlement-payment issue, and mortgage-pricing damages.

48. Plaintiff's June 3, 2026 demand letter demanded correction or deletion of inaccurate, incomplete, or unverifiable consumer-credit reporting; refund of the $209.12 settlement payment; reversal or itemization of the $1,233.86 in disputed 2025 entries; explanation or suppression of the $112.61 portal balance; and compensation for actual damages.

49. Defendant acknowledged the matter through its Executive Office but did not provide a substantive cure before this action was filed.

50. Plaintiff has sustained actual monetary damages, including restitution damages, disputed account charges, out-of-pocket dispute costs, credit impairment, mortgage-pricing damages, and related losses.

51. Plaintiff's damages, when aggregating all categories pleaded herein, equal or exceed the $15,000 amount sought in this action. Plaintiff waives any claim for damages in excess of $15,000, exclusive of interest and costs, for purposes of this action only. Plaintiff does not waive any recoverable court costs, statutory costs, post-judgment interest, or attorneys' fees to the extent such amounts are recoverable by law and may be awarded by this Court within or in addition to its monetary jurisdiction.

52. Plaintiff seeks a money judgment of $15,000, exclusive of interest and costs.

**FIRST CAUSE OF ACTION**
**Breach of Settlement Agreement / Breach of Account-Servicing Obligations**

53. Plaintiff repeats and realleges paragraphs 1 through 52.

54. Plaintiff and Defendant, directly or through Defendant's authorized collection channel, entered into a settlement arrangement concerning Account ending 71003.

55. Plaintiff performed by causing the agreed $209.12 settlement payment to be made.

56. Defendant accepted the settlement payment.

57. Defendant confirmed the account had been settled and that no further collection attempts would be made concerning the remaining balance.

58. Defendant breached the settlement and related account-servicing obligations by failing to administer the settled account consistently with its own settlement confirmation.

59. Defendant's breach included maintaining or displaying a $112.61 payment-due balance after settlement, maintaining contradictory account-status records, failing to reconcile disputed account entries, and refusing to correct account consequences caused by its inconsistent records.

60. Plaintiff was damaged by Defendant's breach.

61. Plaintiff is entitled to money damages in an amount to be proven at trial, up to this Court's jurisdictional limit.

**SECOND CAUSE OF ACTION**
**Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b)**

62. Plaintiff repeats and realleges paragraphs 1 through 61.

63. Defendant is a furnisher of information to consumer reporting agencies.

64. Plaintiff is a consumer within the meaning of the Fair Credit Reporting Act.

65. Plaintiff disputed Defendant's reporting through one or more consumer reporting agencies.

66. Upon information and belief, the consumer reporting agencies notified Defendant of Plaintiff's disputes.

67. After receiving notice of Plaintiff's disputes through consumer reporting agencies, Defendant was required to conduct a reasonable investigation, review relevant information, report the results of its investigation, and correct, delete, modify, or block information that was inaccurate, incomplete, or unverifiable.

68. Defendant failed to conduct a reasonable investigation.

69. Defendant failed to reasonably review and reconcile its own relevant records, including the May 6, 2026 settlement/no-further-collection letter, the May 11, 2026 Credit Bureau Unit letter, the May 26, 2026 portal screenshots, the 2025 Year-End Summary, the June 1, 2026 CFPB

response, and the June 10, 2026 Credit Bureau Unit letter acknowledging a credit-bureau-reporting inquiry and requesting consumer-identifying information.

70. Defendant failed to reasonably investigate the account's settlement status, balance, reported status, consumer-reporting basis, dispute coding, payment history, account identifier, and disputed fee/reversal-driven balance.

71. Defendant's June 10, 2026 Credit Bureau Unit letter further confirms that Defendant had notice of the credit-bureau-reporting dispute and treated the matter as involving furnishing to consumer reporting agencies.

72. AMEX's June 10, 2026 Credit Bureau Unit correspondence demonstrates that AMEX's furnishing investigation processes were operating in isolation from AMEX's broader account-servicing and dispute-resolution functions, undermining the reasonableness of any investigation purportedly conducted under 15 U.S.C. § 1681s-2(b).

73. Defendant continued to verify, maintain, or refuse to correct information that was inaccurate, incomplete, inconsistent, duplicative, or unverifiable.

74. Defendant's conduct was negligent, reckless, or willful.

75. Plaintiff suffered actual damages, including credit impairment, mortgage-pricing damages, dispute costs, out-of-pocket losses, and related harm.

76. Plaintiff is entitled to actual damages, statutory damages where available, punitive damages where available, costs, and any other monetary relief allowed by law, capped in this action by this Court's jurisdictional limit.

77. Pursuant to 15 U.S.C. § 1681n(a)(1)(A), Plaintiff is entitled to statutory damages of not less than $100 and not more than $1,000 per willful violation. Each instance of inaccurate furnishing, each instance of inadequate investigation under § 1681s-2(b), and each instance of refusal to correct or delete after notice constitutes a separate violation.

## THIRD CAUSE OF ACTION
## New York General Business Law § 349

78. Plaintiff repeats and realleges paragraphs 1 through 77.

79. Defendant engaged in consumer-facing, standardized account servicing, dispute handling, settlement administration, credit-bureau correspondence, customer-portal display, and credit-reporting conduct.

80. Defendant's conduct was consumer-oriented because it involved standardized customer-facing systems, standardized account communications, standardized dispute processes, and consumer-credit reporting that affects individuals beyond this isolated transaction.

81. Defendant's conduct was materially misleading.

82. Defendant displayed or maintained a payment-due balance while also stating that the account was settled and that no further payment was required.

83. Defendant maintained inconsistent account status information after settlement.

84. Defendant requested consumer-identifying information from Plaintiff in connection with credit-bureau reporting while maintaining contradictory positions concerning the account's status, balance, settlement treatment, and credit reporting.

85. Defendant refused to reconcile disputed fee, interest, returned-payment, reversal, balance, and reporting information.

86. Defendant's conduct caused Plaintiff actual injury, including monetary loss, dispute expenses, credit impairment, and mortgage-pricing harm.

87. Plaintiff is entitled to actual damages, statutory damages, treble damages where available, costs, and any other monetary relief allowed by law, capped in this action by this Court's jurisdictional limit.

**FOURTH CAUSE OF ACTION**
**Restitution / Unjust Enrichment in the Alternative**

88. Plaintiff repeats and realleges paragraphs 1 through 87.

89. Defendant received and retained the $209.12 settlement payment.

90. Defendant also assessed, maintained, collected, or attempted to justify disputed 2025 fees, interest, returned-payment entries, and reversal entries.

91. Defendant's own records indicate that the disputed 2025 balance was overwhelmingly driven by fees, interest, returned-payment entries, and reversal entries rather than new merchant purchases.

92. Defendant has not provided a coherent transaction-level reconciliation establishing that each disputed entry was valid, nonduplicative, properly assessed, properly disclosed, and properly applied.

93. Under the circumstances, Defendant's retention of disputed amounts is inequitable.

94. Plaintiff is entitled to restitution and money damages in an amount to be proven at trial, up to this Court's jurisdictional limit.

**DAMAGES**

95. Plaintiff repeats and realleges paragraphs 1 through 94.

96. Plaintiff's damages include, but are not limited to:

   a. $209.12 paid in settlement of the disputed account;

   b. $1,233.86 in disputed fees, interest, returned-payment entries, and reversal entries;

   c. $112.61 in disputed portal-balance/payment-due display;

   d. any disputed consumer-side charge-off or accounting consequences;

   e. out-of-pocket dispute, mailing, credit-report, documentation, and filing costs;

   f. credit impairment;

   g. mortgage-pricing damages arising from the documented estimated 3/8% to 1/2% mortgage-rate impact;

CV00966-26

VERIFICATION

h. loss of credit opportunity, inconvenience, and related damages recoverable by law; and

i. statutory and punitive damages where permitted by law.

97. Plaintiff seeks judgment in the amount of $15,000, exclusive of interest and costs, which reflects the aggregate of Plaintiff's calculable restitutionary losses ($209.12, $1,233.86, and $112.61), documented out-of-pocket dispute costs, the computable mortgage-pricing differential, and statutory damages available under 15 U.S.C. § 1681n, capped at this Court's jurisdictional limit.

**DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff Lisa M. Beilfuss demands judgment against Defendant AMERICAN EXPRESS NATIONAL BANK d/b/a AMERICAN EXPRESS as follows:

1. money damages in the amount of $15,000;
2. pre-judgment interest where allowed by law;
3. post-judgment interest where allowed by law;
4. court costs and disbursements;
5. statutory damages where allowed by law;
6. punitive damages where allowed by law, within the Court's monetary jurisdiction; and
7. reasonable attorneys' fees under 15 U.S.C. §§ 1681n(a)(3) and/or 1681o(a)(2), if Plaintiff retains counsel during the pendency of this action, to the extent recoverable by law and within or in addition to this Court's monetary jurisdiction;
8. such other money relief as the Court deems just and proper.

Dated: June 24, 2026
New Hartford, New York

Respectfully submitted,

Lisa M. Beilfuss

Lisa M. Beilfuss, Plaintiff Pro Se
200 Stonegate Road
New Hartford, New York 13413
Phone: (708) 309-5474
Email: lisabeilfuss@gmail.com

h. loss of credit opportunity, inconvenience, and related damages recoverable by law; and
i. statutory and punitive damages where permitted by law.

97. Plaintiff seeks judgment in the amount of $15,000, exclusive of interest and costs, which reflects the aggregate of Plaintiff's calculable restitutionary losses ($209.12, $1,233.86, and $112.61), documented out-of-pocket dispute costs, the computable mortgage-pricing differential, and statutory damages available under 15 U.S.C. § 1681n, capped at this Court's jurisdictional limit.

**DEMAND FOR JUDGMENT**

WHEREFORE, Plaintiff Lisa M. Beilfuss demands judgment against Defendant AMERICAN EXPRESS NATIONAL BANK d/b/a AMERICAN EXPRESS as follows:

1. money damages in the amount of $15,000;
2. pre-judgment interest where allowed by law;
3. post-judgment interest where allowed by law;
4. court costs and disbursements;
5. statutory damages where allowed by law;
6. punitive damages where allowed by law, within the Court's monetary jurisdiction; and
7. reasonable attorneys' fees under 15 U.S.C. §§ 1681n(a)(3) and/or 1681o(a)(2), if Plaintiff retains counsel during the pendency of this action, to the extent recoverable by law and within or in addition to this Court's monetary jurisdiction;
8. such other money relief as the Court deems just and proper.

Dated: June 24, 2026
New Hartford, New York

Respectfully submitted,

Lisa M. Beilfuss

Lisa M. Beilfuss, Plaintiff Pro Se
200 Stonegate Road
New Hartford, New York 13413
Phone: (708) 309-5474
Email: lisabeilfuss@gmail.com

CV 00966-26

**VERIFICATION**

STATE OF NEW YORK
COUNTY OF ONEIDA

Lisa M. Beilfuss, being duly sworn, deposes and says:

I am the Plaintiff in this action. I have read the foregoing Verified Complaint. The factual statements in it are true to my own knowledge, except as to matters stated upon information and belief, and as to those matters I believe them to be true.

FILED UTICA CITY COURT
JUN 24 '26 PM1:17

Lisa M. Beilfuss

Sworn to before me this
24th day of June, 2026

Notary Public

Lina M. Parkhurst
Notary Public State of New York
Reg 01PA4906979
Appointed In Oneida County
My Commission Expires Oct. 5 2029